UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BARRAGAN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-0584 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the Court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born June, 13, 1979, applied for DIB and SSI benefits on September 17, 2010, alleging disability February 28, 2006.[1] Administrative Transcript ("AT") 147-48. Plaintiff alleged she was unable to work due to seizures, back pain, and anxiety. AT 152. In a decision

---

[1] Under the Act, payment of SSI benefits is precluded for any months prior to the month the application was filed, regardless of the alleged onset date of disability.

dated January 31, 2012, the ALJ determined that plaintiff was not disabled.[2] AT 17-26. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2006, the alleged onset date.
>
> 3. The claimant has the following severe impairments: back strain and seizure disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |
|---|---|
| 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light as work defined in 20 CFR 404.1567 (b) and 416.967 (b) except she is restricted from working at heights and around dangerous machinery. |
| 6. | The claimant is capable of performing past relevant work as a cashier-checker. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity. |
| 7. | The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2006, through the date of this decision. |

AT 19-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding her not disabled: (1) the ALJ erred in finding that there was no severe mental impairment at step two; (2) the ALJ improperly relied on the opinion of Dr. Torrez; (3) the ALJ erred in finding that plaintiff's seizure disorder did not meet the listing requirements; (4) the ALJ erred in finding that plaintiff had minimal residual functioning; and, (5) the ALJ erred in failing to obtain vocational expert testimony. ECF No. 19.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

1  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
2  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
3  conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
4  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
5  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
6  administrative findings, or if there is conflicting evidence supporting a finding of either disability
7  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
8  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
9  weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff initially contends that the ALJ committed error at step two of the sequential evaluation process by failing to find that plaintiff's mental impairments were severe. ECF No. 19, 28. She alleges that the ALJ ignored significant findings made by her physicians and failed to adequately develop the record. Id. at 29. Plaintiff's primary argument is that the ALJ failed to meaningfully discuss and assess her records from Kaiser Permanente ("Kaiser"), which include various opinions by treating physicians. This assertion remains an underlying issue in plaintiff's remaining claims.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's

opinion generally is accorded superior weight, if it is contradicted by a supported examining professional''s opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

At step two of the sequential evaluation process, the ALJ found that plaintiff''s medically determinable mental impairments of depression and anxiety do not cause more than a minimal limitation in her ability to perform basic mental work activities and are thus non-severe. AT 20-22.  In making his mental impairment finding, the ALJ relied on the opinion of Dr. Silvia Torrez, dated December 13, 2010, and the psychiatric review technique form filled out by state agency medical consultant D.B. Johnson, dated February 25, 2011. AT 20-22, 522-527, 605-619.  The ALJ noted that Dr. Torrez found plaintiff had: no bizarre or inappropriate behavior; normal stream of thought and mental activity; logical, coherent, and concise speech; appropriate thought content; no indications of hallucinations or delusions; dysthymic mood; affect congruent with mood; average intellectual functioning; normal concentration, abstract thinking, judgment, and insight; and, a Global Assessment of Functioning ("GAF") score of 67.[3]  AT 20-22.  Dr. Torrez also noted that plaintiff''s functional abilities are generally good and that the likelihood of her emotionally deteriorating in the work environment is minimal. AT 526-527.  The ALJ found Dr. Torrez''s opinion to be persuasive and assigned it significant weight. AT 20.  The ALJ also relied

---

[3]   Global Assessment of Functioning is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A 61-70 GAF rating indicates some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. at 34.

on the state agency medical consultant's findings that plaintiff had: mild restriction in activities of daily living; no difficulties maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and, no episodes of decompensation of extended duration. AT 21, 605-619. Although this is the only other opinion relied on by the ALJ in making his mental impairment findings, he did not expressly assign it any weight.

Lastly, in making his finding, the ALJ briefly discussed plaintiff's records from her numerous visits to Kaiser, stating:

> Kaiser Permanente practitioners similarly noted that speech was normal. Affect was full range and appropriate. Thought process was logical and thought content was normal and goal directed. The [plaintiff] was fully oriented with normal attention and concentration. Recent and remote memory was intact. Fund of knowledge was normal. Impulse control, insight and judgment were good.

AT 20. This paragraph purportedly assesses three reports dealing with plaintiff's mental impairments from 2008. AT 234-251. However, it does not purport to address other reports from Kaiser dealing with plaintiff's mental impairments that are elsewhere in the record. See AT 382-391, 584-601.

In rejecting the opinions of the treating Kaiser mental health practitioners, the ALJ was required to set forth specific and legitimate reasons for assigning great weight to Dr. Torrez's opinion[4] and relying heavily on the state agency medical consultant's opinion. Lester, 81 F.3d at 830. Also, in making his determination, the ALJ was required to consider the record as a whole. Howard, 782 F.2d at 1487. Furthermore, it was necessary for the ALJ to weigh both evidence that supports and that which detracts from his conclusion. See Jones, 760 F.2d at 995; see also Hammock, 879 F.2d at 501.

Although the ALJ thoroughly addressed Dr. Torrez's opinion, there is a substantial amount of relevant information from the remaining sources that the ALJ failed to discuss. The state agency medical consultant's check-box form indicates that plaintiff had medically determinable impairments of major depression, anxiety disorder, and panic disorder. AT 608,

---

[4] No records were made available to Dr. Torrez for review. AT 522.

6

610. However, the ALJ did not discuss how those findings relate to the consultant's findings that plaintiff has only mild restrictions in activities of daily living, mild difficulties maintaining concentration, persistence, or pace, and no difficulties in maintaining social functioning. AT 615. Also, the ALJ also did not discuss that the Kaiser records indicate that plaintiff had: a family history of depression, bipolar disorder, and schizophrenia; a risk of "bi-polar disorder vs. [p]anic disorder with agoraphobia and MDD, single episode"; GAF scores of 51-60[5] and 41-50[6]; a depressed, anxious, and dysphoric mood; increased seizure episodes when under stress; occasional passive suicide ideation; diagnoses of panic disorder and depression; and, problems related to social environment. AT 234-250.

      Furthermore, the ALJ completely failed to address some of the Kaiser records, which contain a substantial amount of information regarding plaintiff's mental impairments. Dr. Muhammad Ali Meatchem saw plaintiff on December 8, 2010 and January 6, 2010, and diagnosed plaintiff with anxiety disorder, recurrent major depression, and panic disorder. AT 584, 590. Dr. Meatchem gave plaintiff a GAF score of 51-60 and noted that plaintiff had a depressed and anxious mood and congruent affect. AT 587, 592. Dr. Patrick Wong saw plaintiff on February 2, 2011, and diagnosed plaintiff with anxiety disorder. AT 594. Dr. Wong gave plaintiff a GAF score of 51-60 and noted that plaintiff had a somatic expression of anxiety and had an anxious but well-modulated affect. AT 596.

      The ALJ similarly failed to account for these medical records in his analysis of plaintiff's residual functional capacity. In his analysis, the ALJ's only mention of plaintiff's mental impairments was as follows:

> Despite [plaintiff's] reported symptoms and history, practitioners noted that she did not appear to be suffering from a major mental disorder and was functioning adequately. Although she reported anxiety when interacting with others and in especially (sic) crowds, she goes outside daily, shops, goes to church and takes public

---

[5] A 51-60 GAF rating indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM IV-TR at 34.

[6] A 41-50 GAF rating indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, work, or school functioning (e.g., no friends, unable to keep a job). DSM IV-TR at 34.

>transportation. She reported that she has 20-25 friends who she „hangs out with", goes to lunch or coffee with, visits at their other"s (sic) homes and goes places (such as the zoo) with their children. She has never participated in counseling, never has been admitted into a psychiatric facility, has never attempted suicide and does not get into physical altercations.

AT 24. This description of plaintiff"s mental impairment record is not only inadequate, as shown above, but it is also contrary to other aspects of plaintiff"s record that the ALJ failed to address. For instance, plaintiff testified that she has one "lady friend" that does not live in Sacramento and she does not have a driver"s license due to her seizures, so she uses public transportation to her appointments when necessary. AT 61-62, 65. There are numerous notes in the record indicating that plaintiff attended psychiatric counseling. See AT 234, 238, 244, 591. Also, as for her participation in physical altercations, there is evidence in the record that her husband was abusive and that she was involved in an assault and battery by two women. AT 245, 248, 249, 307.

Again, the ALJ cannot isolate evidence supporting his decision without weighing evidence that detracts from it. See Jones, 760 F.2d at 995; see also Hammock, 879 F.2d at 501. The conflicting evidence in the record should have been, but was not, assessed by the ALJ. Because the ALJ did not properly assess the whole record, as discussed above, he has failed to set forth specific and legitimate reasons for crediting and assigning significant weight to Dr. Torrez"s opinion and relying so heavily on the state agency medical consultant"s opinion. Failing to appropriately address the whole record also undermines the ALJ"s findings on credibility[7] and residual functional capacity.

For these reasons, this matter will be remanded so the whole record may be fully and properly addressed by the ALJ in his or her assessment of the medical opinions in the record, plaintiff"s credibility, and the resulting residual functional capacity.

---

[7] Upon review of the record, this Court has found that plaintiff often provided inconsistent information to her numerous physicians and during her testimony before the ALJ. However, it is not in this Court"s purview to assess the plaintiff"s credibility based on this finding. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). Because the ALJ failed to properly assess the aforementioned medical records and did not establish that plaintiff was malingering, his assessment of plaintiff"s credibility cannot be said to be based on clear and convincing evidence. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

CONCLUSION

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and for further findings addressing the deficiencies noted above. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is granted for purposes of readdressing the medical opinions in the record, plaintiff's credibility, and the resulting residual functional capacity.

2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is denied; and,

3. This matter is remanded for further proceedings consistent with this order.

Dated: March 18, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

33/4 barr0584.ss.rem